UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORIGINAL

------------------------------------ x

UNITED STATES OF AMERICA                 :

  - v. -                                 :       **INFORMATION**

JOEL REICH,                              :       24 Cr. 335 (    )

            Defendant.           :

------------------------------------ x

## COUNT ONE
**(Conspiracy to Defraud the Government)**

The United States Attorney charges:

### BACKGROUND ON SBA LENDING

1.     The Small Business Administration ("SBA") is a federal agency that administers assistance to American small businesses. This assistance includes guaranteeing loans that are issued by certain lenders to qualifying small businesses. Under the SBA loan guarantee programs, the loan is issued by a commercial lender, but the lender receives the full faith and credit backing of the United States government on a percentage of the loan. When a borrower seeks an SBA guaranteed loan, the borrower must meet both the commercial lender's eligibility requirements for the loan as well as the SBA's eligibility requirements.

2.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in March 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of billions of dollars in forgivable loans to small businesses for job retention and certain other expenses through the PPP ("First Draw PPP loan").  In December 2020, the Consolidated Appropriations Act (2021)

was signed into law. It contained a new comprehensive COVID-19 relief bill and extended the PPP. It included billions more dollars in funding for more easily forgivable PPP loans and allowed businesses that previously obtained PPP loans to obtain a second forgivable loan ("Second Draw PPP loan").

3.     The PPP allowed qualifying small businesses and other organizations to receive unsecured SBA-guaranteed loans with an interest rate of 1%. PPP loan proceeds had to be used by businesses on payroll costs, mortgage interest, rent, and/or utilities. The PPP allowed the interest and principal to be forgiven if businesses spent the proceeds on these payroll costs and other eligible expenses within a specified period.

4.     Pursuant to the CARES Act, the amount of PPP funds a business was eligible to receive was determined by the number of its employees and its average payroll costs. Businesses applying for a PPP loan had to provide documentation, including payroll, bank and/or tax records, to confirm that they had in the past paid employees the compensation represented in the loan application. Eligible businesses had to have been in operation on or before February 15, 2020, and had paid either employees or independent contractors. Businesses had to have been overseen by the SBA, which has authority over all PPP loans, but individual PPP loans were issued by approved commercial lenders who received and processed applications and supporting documentation, and then made loans using the lenders' own funds.

5.     Both the First Draw and Second Draw PPP borrower applications required the applicant to answer the following question with a "Yes" or "No" response:

> "Is the applicant or any owner of the applicant an owner of any other business, or have common management with, any other business?"

2

6.    The First Draw PPP borrower application required the applicant to make and place their initials by the following certification, among others:

"During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program."

. . .

"I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

7.    The Second Draw PPP borrower application required the applicant to make and place their initials by the following certifications, among others:

"The Applicant has not and will not receive another Second Draw Paycheck Protection Program Loan."
. . .

"I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

8.    The 7(a) Program provides financial assistance for small businesses with special requirements.  The maximum loan amount is $5 million.  To be eligible, among other things, businesses must: operate for profit; be considered a small business as defined by SBA; be

able to demonstrate a need for a loan; use the funds for a sound business purpose; and not be delinquent on any existing debt obligations to the United States government.

9.     Applications for 7(a) Program loans contain a "Use of Proceeds" section that identifies permitted uses of the loan proceeds and requires borrowers to identify what amount of the 7(a) loan proceeds will be allocated to these authorized uses.  Permitted uses of the loan proceeds include, among other things, machinery and equipment purchase, inventory purchase, and working capital.

10.     An SBA Form 1050 Settlement Sheet ("SBA Form 1050") also must be completed and made a part of the loan file.  One purpose of this form is to document and verify that loan proceeds have been disbursed in accordance with the loan authorization.  The SBA Form 1050 is to be completed by the lender and signed by the lender and the borrower at the time of the initial loan disbursement.  The lender retains a copy of the signed form in its loan file.  For all disbursements, the lender also retains documentation that is acceptable to SBA (*e.g.*, cancelled checks, paid receipts or invoices, wire transfer account records), and evidences compliance with the "Use of Proceeds" section of the loan authorization.

## THE DEFENDANT AND RELEVANT ENTITIES

11.     During the Relevant Time Period, JOEL REICH, the defendant, owned several business entities ("the REICH Entities") solely, or jointly with another.  The REICH Entities, which were based in Chester, New York, included the following, among others: Sub Enterprises, Inc. ("Sub Enterprises"); Hallmark Enterprises, LLC ("Hallmark Enterprises"); Concrete Water Remediation Inc. ("Concrete Water Remediation"); Drip Drop Waterproofing Inc. ("Drip Drop Waterproofing"); and various combinations of these entity names.

4

12.    During the Relevant Time Period, the REICH Entities transacted business in one another's names, shared bank accounts, used the same business and/or mailing addresses, and employed many of the same people.  JOEL REICH, the defendant, was a sole signer on some REICH Entity bank accounts and a joint signer on others.

## STATUTORY ALLEGATION

13.    From in or about April 2020 through in or about April 2021, in the Southern District of New York and elsewhere, JOEL REICH, the defendant, and others known and unknown, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343.

14.    It was a part and an object of the conspiracy that JOEL REICH, the defendant, and others known and unknown, would and did, knowingly and willfully, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and attempting to do so, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit,  JOEL REICH and others known and unknown, participated in a scheme to defraud banks, lending companies and the SBA by making and causing others to make materially false statements on applications for PPP and 7(a) Program loans and submitting loan applications, along with false and fraudulent documents in support of the loan applications to banks, lenders and the SBA, and in furtherance thereof, caused wire

submissions, communications and monetary transactions to be sent in interstate commerce, and obtained over $6 million in loan proceeds.

## Overt Acts

15.     In furtherance of the conspiracy and to affect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.     On or about April 26, 2020, JOEL REICH submitted an application to Bank-1 for a first draw PPP loan on behalf of Sub Enterprises dba Drip Drop Waterproofing and caused Bank-1, on or about May 13, 2020, to extend a PPP loan to Sub Enterprises dba Drip Drop Waterproofing in the amount of $159,997.

b.     On or about June 19, 2020, JOEL REICH submitted an application for a PPP loan on behalf of Hallmark Enterprises dba Drip Drop Waterproofing to Lender-1 and certified that it had not received any other PPP loan.

c.     In support of the June 19, 2020, application to Lender-1, JOEL REICH submitted an altered bank statement.

d.     JOEL REICH caused Lender-1, on or about July 6, 2020, to extend a loan in the amount of $600,360 to Hallmark Enterprises dba Drip Drop Waterproofing and wire transferred the loan proceeds to a Hallmark Enterprises dba Sub Enterprises Drip Drop Waterproofing bank account.

e.     On or about January 29, 2021, JOEL REICH applied for a Second Draw PPP loan to Bank-2 on behalf of Hallmark Enterprises and submitted purported IRS forms 941 in the name of Hallmark Enterprises for the tax year 2019.

f.    JOEL REICH caused Bank-2, on or about March 14, 2021, to extend a Second Draw $471,292 PPP loan to Hallmark Enterprises and wire transferred the proceeds to a Hallmark Enterprises bank account.

g.    On or about March 27, 2021, JOEL REICH applied for a Second Draw PPP loan to Bank-1 on behalf of Sub Enterprises dba Drip Drop Waterproofing and certified that the applicant had not and would not receive another Second Draw PPP loan.

h.    JOEL REICH caused Bank-1, on or about April 2, 2021, to extend a Second Draw $158,167 PPP loan to Sub Enterprises dba Drip Drop Waterproofing and wire transferred $158,167 to a Hallmark Enterprises dba Sub Enterprises Drip Drop Waterproofing bank account.

i.    On or about October 28, 2021, JOEL REICH submitted an application for a 7(a) Program loan in the amount of $5 million on behalf of Hallmark Enterprises to Lender-2.

j.    On or about December 23, 2021, JOEL REICH electronically signed and submitted an SBA Form 1050 indicating that $1,098,360 in loan proceeds were going to be disbursed to a company ("Company-1") for the purchase of "Machinery & Equipment" and a purported invoice in the name of Company-1 that identified the equipment to be purchased.

k.    JOEL REICH caused Lender-2 to issue a $5 million 7(a) Program loan to Hallmark Enterprises and to transfer $1,098,360 in loan proceeds to a bank account controlled by REICH.

(Title 18, United States Code, Section 371.)

7

## FORFEITURE ALLEGATION

16.    As a result of committing the offense alleged in Count One of this Information, JOEL REICH, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense alleged in Count One of this Information, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

### Substitute Assets Provision

17.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

DAMIAN WILLIAMS
United States Attorney